**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ASHLEY HUTCHINSON-HARPER, ET AL.** | **CIVIL ACTION** |
| | **NO. 22-1271** |
| **VERSUS** | |
| | **SECTION: "P" (4)** |
| **JEFFERSON PARISH SCHOOL BOARD, ET AL.** | |

<u>**ORDER AND REASONS**</u>

Before the Court is the Motion for Summary Judgment filed by Defendant Sheriff Joseph P. Lopinto III in his official capacity as Sheriff of Jefferson Parish.[1] Plaintiffs Ashley Hutchinson-Harper and Terry Harper, on behalf of their minor child, J.H., oppose the motion.[2] Having considered the motion, the parties' briefing, the record, and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment for the following reasons.

## I.    BACKGROUND

This civil action arises out of the arrest of J.H., a ten-year-old boy with disabilities, while on school grounds at C.T. Janet Elementary School in Jefferson Parish. J.H. had been diagnosed with Attention Deficit Hyperactivity Disorder, Oppositional Defiance Disorder, a mood disorder, and emotional outbursts.[3] On May 13, 2021, Sharona Comer, the school's administrative assistant, and Tara Pierce, the school's assistant principal, called 911.[4] Comer reported that J.H. punched the principal in the back of the head, ran outside the building, and threw a metal trash can through a glass window, before taking off on foot and heading into a field behind the school.[5] The 911 call

---

[1] R. Doc. 47.
[2] R. Doc. 71.
[3] R. Doc. 71-12 at 9, 11, 39; R. Doc. 71-14 at 1.
[4] R. Doc. 71-8 at 3; R. Doc. 71-6 at 16.
[5] R. Doc. 71-8 at 3.

audio log reveals Comer informed dispatchers that J.H. was ten years old and did not possess any weapons.[6] Pierce said in her deposition that she told the 911 dispatcher that J.H. had special needs.[7] The 911 call log reflects the dispatcher had informed the police that J.H. was "on meds."[8] His height and weight at the time of the incident are disputed.[9]

When the police officers arrived, J.H. was walking around the school grounds and was not responding to anyone.[10] It is disputed whether the officers spoke with the elementary school staff before approaching J.H. because Plaintiffs have submitted evidence that the officers spoke to school officials before approaching J.H., while the officers submit they did not do so.[11] The officers approached J.H., grabbed his arm and restrained him.[12] Plaintiffs submitted evidence that an officer put J.H. in a chokehold for about a minute and then yanked J.H. to the ground.[13] The JPSO Officer disputed this in his deposition and described the "chokehold" as him using his free hand to reach across J.H.'s torso and "kind of bring him into a hug, kind of just to hold him and prevent him from running."[14] It is undisputed that the officers handcuffed J.H.[15] The officers brought J.H. into the school building, and school officials gave the officers J.H.'s emergency card, which identified him as a special education student.[16] The officers then held J.H., handcuffed, in the school office for about an hour without his parents present, while other officers obtained statements from school officials and took photographs of the damaged property.[17] After

---

[6] R. Doc. 71-8 at 2.
[7] R. Doc. 71-6 at 17.
[8] R. Doc. 71-8 at 3.
[9] R. Doc. 47-4 at 3 (Police Report recording J.H. as 5'6" and 112 pounds); R. Doc. 71-12 at 49 (Deposition of J.H.'s mother stating that J.H. weighed 93 pounds).
[10] R. Doc. 71-2 at 13, 55.
[11] R. Doc. 71-7 at 3; R. Doc. 71-2 at 17.
[12] R. Doc. 47-2 at 2; R. Doc. 71-2 at 16.
[13] R. Doc. 71-2 at 16, 41.
[14] R. Doc. 71-3 at 29.
[15] R. Doc. 71-2 at 16.
[16] R. Doc. 71-7 at 29.
[17] R. Doc. 71-4 at 14-19; R. Doc. 71-12 at 34; R. Doc. 71-2 at 27; R. Doc. 47-6 at 86.

concluding their investigation, the officers escorted J.H. to the Juvenile Assessment Center, and J.H. was charged with several misdemeanor violations.[18]

Plaintiffs sued the Jefferson Parish School Board and Sheriff Joseph P. Lopinto, III in his official capacity as Sheriff of Jefferson Parish. Relevant here, Plaintiffs asserted claims against Sheriff Lopinto for: (1) disability-based discrimination and failure to accommodate in violation of Title II of the Americans with Disabilities Act (ADA); (2) disability-based discrimination and failure to accommodate in violation of Section 504 of the Rehabilitation Act of 1973; (3) physical condition-based discrimination in violation of Article I, Section 12 of the Louisiana Constitution; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress.[19]

Lopinto moved for summary judgment.[20] Lopinto asserts that Plaintiffs cannot meet their burden of proof on their ADA and Rehabilitation Act claims because they cannot meet the requisite knowledge requirement. Lopinto also asserts that, as to the Louisiana constitutional claim, Plaintiffs cannot meet their burden of showing there is a policy of access in place that is arbitrary, capricious, or unreasonable. Finally, Lopinto asserts that Plaintiffs have failed to allege, and cannot prevail on, a claim for negligent infliction of emotional distress under Louisiana law. Lopinto did not move for summary judgment on Plaintiffs' claim for intentional infliction of emotional distress. Lopinto instead asserts that Plaintiffs did not make a claim for intentional infliction of emotional distress. The Court considers Lopinto's motion below.

---

[18] R. Doc. 71-4 at 46-47; R. Doc. 47-4 at 9-10.
[19] R. Doc. 22.
[20] R. Doc. 47.

3

## II.    LEGAL STANDARD

Summary judgment is proper when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] When the dispositive issue raised in a motion for summary judgment is one on which the nonmovant will bear the burden of proof at trial, the movant may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[22] The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine dispute of material fact exists.[23] The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution.[24]

A fact is material if proof of its existence or nonexistence would affect the outcome of the lawsuit under the law applicable to the case.[25] A dispute about a material fact is genuine if it is one upon which a reasonable jury could return a verdict for the nonmoving party based upon the resolution of the factual issue.[26] "When assessing whether a dispute as to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[27]

---

[21] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

[22] *See Celotex*, 477 U.S. at 325.

[23] *See id.* at 324.

[24] *See, e.g., id.*; *Little*, 37 F.3d at 1075 (quoting *Celotex*, 477 U.S. at 322) ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'").

[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[26] *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993).

[27] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (first citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); then citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.    LAW AND ANALYSIS

#### A. Failure-to-Accommodate Claims under the ADA and Rehabilitation Act

Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[28] It further defines "public entities" to include local governments.[29] And it creates a private right of action against local governments for monetary and equitable relief.[30] These provisions allow individuals to sue local governments for disability discrimination committed by police in non-exigent circumstances.[31]

Plaintiffs may sue under Title II of the ADA when a public entity discriminates against them because of their disability, including by failing to accommodate their disability.[32] Section 504 of the Rehabilitation Act prohibits essentially identical conduct, so the two provisions are interpreted in tandem.[33] The ADA and Rehabilitation Act "impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals."[34] An accommodation is reasonable if "it does not impose undue financial or administrative burdens or 'fundamentally alter the nature of the service, program, or activity.'"[35] To succeed on a failure-to-accommodate claim, the plaintiff must show: (1) he is a qualified individual with a disability; (2)

---

[28] 42 U.S.C. § 12132.
[29] *Id.* § 12131(1)(A).
[30] *See id.* § 12133.
[31] *See Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 570–71, 574–76 (5th Cir. 2002).
[32] *Windham v. Harris Cnty.*, 875 F.3d 229, 235–36 (5th Cir. 2017) (discussing 42 U.S.C. §§ 12131–33).
[33] *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).
[34] *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005).
[35] *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020) (quoting 28 C.F.R. § 35.130(b)(7)).

the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations.[36]

Lopinto argues that Plaintiffs have presented no evidence on the second element of the failure-to-accommodate claim: whether JPSO knew of J.H.'s disability and limitations. Lopinto asserts that "there is zero evidence that the responding JPSO Deputies knew that [J.H.] had a mental disability of any kind."[37] Lopinto asserts he is entitled to summary judgment as a matter of law.

To establish the knowledge requirement of a failure-to-accommodate claim, a plaintiff must show that the entity "knew of the disability and its consequential limitations," either because "the plaintiff requested an accommodation or because the nature of the limitation was open and obvious."[38] Thus, mere knowledge of the disability is not enough; the service provider must also have understood the limitations experienced as a result of that disability.[39] Otherwise, it would be impossible for a provider to identify a reasonable accommodation or to identify whether an accommodation is needed at all.[40]

First, the Court finds there is no genuine dispute of material fact regarding whether J.H. requested accommodation. "Because the ADA does not require clairvoyance, the burden falls on the plaintiff to specifically identify the disability and resulting limitations, and to request an accommodation in direct and specific terms."[41] There is no evidence in the record to suggest that J.H. requested an accommodation, and certainly none to suggest he did so in a "direct and specific"

---

[36] *Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020) (quoting *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015)).

[37] R. Doc. 47-1 at 14.

[38] *Cadena*, 946 F.3d at 724.

[39] *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996); *accord Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 444–45 (5th Cir. 2017); *Jin Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 216 (5th Cir. 2015).

[40] *Taylor*, 93 F.3d at 164.

[41] *Windham v. Harris Cnty.*, 875 F.3d 229, 236–37 (5th Cir. 2017) (citation modified).

manner. The record reflects that J.H. largely shouted profanities at the police officers.[42] This does not constitute the kind of clear and definite request for accommodations that would trigger the duty to accommodate under the ADA.[43] Nor does the school's action in providing J.H.'s emergency card after the initial arrest suffice because there is no evidence before the Court that J.H.'s emergency card provided a request for an accommodation. The provision of the card to the officers, without more, does not constitute a request for an accommodation.

Second, the Court finds there is no genuine dispute of material fact regarding whether the nature of J.H.'s disabilities rise to the level of "open, obvious, and apparent."[44] In the absence of a request for an accommodation, J.H. must show that his disabilities and the accommodations he needed because of his disabilities were so open, obvious, and apparent to the officers that a request was unnecessary.[45] The Fifth Circuit has held that "outwardly visible disabilities" like "blindness, deafness, or being wheel-chair-bound" are open and obvious,[46] whereas mental disabilities—like the ones affecting J.H.—are often not apparent.[47] The Court finds Plaintiffs have not met their burden of pointing to competent summary judgment evidence that J.H.'s disabilities were so open, obvious, and apparent that a request for an accommodation was unnecessary.

Further, even if the Court were to accept that the nature of J.H.'s disabilities was apparent, this is not enough. The limitations resulting from those disabilities, and the reasonable accommodation needed, must also be open, obvious, and apparent to the officers. Plaintiffs have failed to identify evidence to show the limitations resulting from J.H.'s disabilities, and that any necessary reasonable accommodations, were open, obvious, and apparent to the officers.

---

[42] R. Doc. 71-3 at 31 ("[H]e was shouting profanities in a loud tone . . . .").
[43] *See Taylor*, 93 F.3d at 165.
[44] *Windham*, 875 F.3d at 239.
[45] *Id.* at 237.
[46] *Id.* at 238.
[47] *Taylor*, 93 F.3d at 164.

Knowledge of J.H.'s disabilities is distinct from knowledge of the resulting limitations and knowledge of necessary accommodations.[48] Indeed, Plaintiffs have still not identified summary judgment evidence showing what would constitute reasonable accommodations for J. H. Therefore, J.H. cannot avail himself of the narrow exception applicable only to people whose disabilities, limitations, and necessary accommodations are "open, obvious, and apparent."[49] J. H. instead falls within the generally applicable rule that if an individual "fails to request an accommodation, the [public entity] cannot be held liable for failing to provide one."[50]

Plaintiffs' contrary argument that J.H.'s disabilities and necessary accommodations were "open, obvious, and apparent" is not enough to meet Plaintiff's burden. First, Plaintiffs have cited nothing in the way of precedent suggesting J.H.'s mental health crisis was sufficient to alert the officers to J.H.'s disabilities and his needed accommodations.[51] Second, the primary case upon which Plaintiffs rely, *Phillips ex rel. J.H. v. Prator*,[52] is a decision at the pleading stage. The Fifth Circuit found the Plaintiffs in that case had plausibly alleged claims of discrimination when a police officer, responding to a school, spent more than five minutes observing a nonverbal student with severe autism stick his fingers in his ears and collide with a wall before tazing the child and

---

[48] *See, e.g.*, *B.S. ex rel. Justin S. v. Waxahachie Indep. Sch. Dist.*, No. 22-10443, 2023 WL 2609320, at *11 (5th Cir. Mar. 23, 2023).

[49] *Taylor*, 93 F.3d at 165.

[50] *Id.*

[51] The primary case upon which Plaintiffs rely, *Phillips ex rel. J.H. v. Prator*, No. 20-30110, 2021 WL 3376524 (5th Cir. Aug. 3, 2021), is not published, and therefore not precedential. *See* 5th Cir. R. 47.5 ("Unpublished opinions issued on or after January 1, 1996 are not precedent . . . ."). In addition, Plaintiffs cite three additional cases that the Court finds to be inapposite and unhelpful to Plaintiffs' case. In *Wade v. Montgomery Cty.*, the court dismissed the plaintiff's claims under the ADA and Rehabilitation Act. No. 4:17-CV-1040, 2017 WL 7058237 (S.D. Tex. Dec. 6, 2017), *report and recommendation adopted*, 2018 WL 580642 (S.D. Tex. Jan. 25, 2018). In *Patrick v. Martin*, the court found, even assuming a qualifying disability under the ADA, the plaintiff could not prevail because "the limitations of" the "disabilities and the accommodations for them" were not "open, obvious, and apparent." No. 2:16-CV-216, 2020 WL 4040969, at *40-42 (N.D. Tex. July 16, 2020). In *Wilson v. Baucom*, the family of the arrestee made clear and definite requests because he was suffering from mental illness and required medical attention, which goes to the request prong instead of the open and apparent prong. No. 20-CV-311-RP, 2021 WL 7081523 (W.D. Tex. Jan. 25, 2021), *report and recommendation adopted as modified*, 2021 WL 7081438 (W.D. Tex. Mar. 23, 2021).

[52] 2021 WL 3376524 (5th Cir. Aug. 3, 2021).

leaving him in a pool of his own urine for thirteen minutes.[53] Importantly, in that case, the court noted that the question remained whether the police officer understood what "he needed to do to accommodate" the child, a question the Fifth Circuit said would be best resolved after discovery.[54] In the current case, however, the parties have completed discovery, and Plaintiffs have not pointed to evidence that the JPSO officers understood what was needed to accommodate J.H.

Because the record contains no evidence that J.H. requested an accommodation and no evidence that any accommodations J.H. needed were "open, obvious, and apparent," Plaintiffs have failed to satisfy their burden of pointing to a genuine issue of material fact regarding an essential element of their claim. Accordingly, Sheriff Lopinto is entitled to summary judgment on Plaintiffs' failure-to-accommodate claims under the ADA and Rehabilitation Act.

### B. Disability-Based Discrimination Claims under the ADA and Rehabilitation Act

Plaintiffs also assert claims for disability-based discrimination under the ADA and Rehabilitation Act. Under Fifth Circuit precedent, the elements of a claim for disability discrimination under the ADA and the Rehabilitation Act are substantially the same, except for the stringency of their causation requirements.[55] A prima facie case for disability-based discrimination under either provision requires the plaintiff to show: (1) that the plaintiff has a disability within the meaning of the ADA; (2) that the plaintiff has been excluded from participation in, denied benefits of, or discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.[56] In addition, a

---

[53] *Id.* at *1-2.
[54] *Id.* at *4-5.
[55] *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). Section 504 of the Rehabilitation Act requires that disability discrimination be the sole reason for the exclusion or denial of the benefits, while under the ADA "discrimination need not be the sole reason." *Id.*
[56] *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672-73 (5th Cir. 2004); *see also Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000).

plaintiff seeking to recover compensatory damages must prove the discrimination was intentional.[57]

Lopinto contends Plaintiffs cannot satisfy the third prong of their disability-based discrimination claim because there is no evidence that the officers knew J.H. had a disability or that the officers discriminated against J.H. based upon their knowledge of his disability. J.H. attempts to satisfy the third prong on a theory of "failure to accommodate." Under that theory, a public entity's failure to reasonably accommodate the known limitations of persons with disabilities can constitute disability discrimination.[58] A critical component of a failure-to-accommodate claim is "proof that 'the disability and its consequential limitations were known'" by the public entity.[59] As discussed in the Section above on Plaintiffs' failure-to-accommodate claim, Plaintiffs have brought forth no evidence that the JPSO officers understood the limitations J.H. experienced because of his disabilities and what accommodations J. H. needed because of his disabilities. Because the record contains no evidence the JPSO officers knew of J.H.'s needed accommodations and failed to provide them, Plaintiffs have failed to point to a genuine issue of material fact as to an essential element of their claim. Sheriff Lopinto is therefore entitled to summary judgment on Plaintiffs' disability-based discrimination claims under the ADA and Rehabilitation Act.

### C. Louisiana Constitutional Law Claim

Article I, Section 12 of the Louisiana Constitution states that "in access to public areas, accommodations, and facilities, every person shall be free . . . from arbitrary, capricious, or unreasonable discrimination based on age, sex, or physical condition."[60] "Access means the ability

---

[57] *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002).
[58] *Windham v. Harris Cnty.*, 875 F.3d 229, 235 (5th Cir. 2017).
[59] *Id.* at 236.
[60] La. Const. art. I, § 12.

to enter, . . . [to] pass to and from, . . . to obtain or make use of."[61] The party alleging a violation of Article I, Section 12 must show (1) the entity and accommodation at issue is public, not private; (2) the entity has a discriminatory practice of excluding the plaintiff from a public accommodation; and (3) that the plaintiff was discriminated against on a protected basis.[62]

Lopinto challenges the second element here. Lopinto asserts that Plaintiffs have failed to meet their burden of showing there is a discriminatory policy of access in place, let alone one that is arbitrary, capricious, or unreasonable.[63] Lopinto asserts the issues here do not relate to discrimination "in access to public areas, accommodations, and facilities."[64]

The Court finds the alleged discrimination at issue in this case does not run afoul of Article I, Section 12 of the Louisiana Constitution. Plaintiffs fail to point to any record evidence that shows Sheriff Lopinto had discriminatory policy of access in place, or that J.H. was deprived of access to a public area, accommodation, or facility within the meaning of Article I, Section 12 of the Louisiana Constitution. The cases upon which Plaintiffs rely do not support Plaintiffs' theory of liability. In *Albright v. Southern Trace Country Club*, the Louisiana Supreme Court found that excluding women from access to a country club dining room violated their state constitutional right to be free from arbitrary, capricious, or unreasonable discrimination based on gender.[65] In *Burgess v. City of Shreveport*, the Louisiana Supreme Court upheld a wrongful death and survival action claim under Article I, Section 12.[66] Betty T. Burgess fell from an unmarked step at a polling place and died of complications from the fall.[67] The Louisiana Supreme Court affirmed the claim

---

[61] *Robertson v. Burger King, Inc.,* 848 F. Supp. 78, 81 (E.D. La. 1994) (quoting *Becnel v. City Stores Co.,* 675 F.2d 731, 734 (5th Cir. 1982)) (quotations omitted).
[62] *Albright v. Southern Trace Country Club of Shreveport, Inc.*, 879 So. 2d 121, 133 (La. 2004).
[63] R. Doc. 47-1 at 15.
[64] *Id.*
[65] 879 So. 2d 121 (La. 2004).
[66] 471 So. 2d 690 (La. 1985).
[67] *Id.* at 692.

under Article I, Section 12, finding that the government needed to "exercise reasonable care in establishing a polling place to locate it in a building which affords each qualified voter an opportunity to exercise his right of voting and access with reasonable safety and convenience free from unreasonable, arbitrary or capricious discrimination based on age or physical condition."[68] Plaintiffs have failed to point to any evidence that creates a genuine issue of material fact regarding whether the officers deprived J.H. of "access to public areas, accommodations, and facilities" in violation of Louisiana Constitution Article I, Section 12. Accordingly, Sheriff Lopinto is entitled to summary judgment on this claim.

### D. Negligent Infliction of Emotional Distress

A claim for negligent infliction of emotional distress without physical injury is viable under La. Civ. Code art. 2315(A).[69]  For liability to attach, a plaintiff must establish: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the specific standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; (5) actual damages; and (6) "the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious."[70]

Here, Sheriff Lopinto challenges only the sixth element: the especial likelihood of genuine and serious mental distress arising from special circumstances.[71] Lopinto simply argues that Plaintiffs do not allege the kind of "special circumstances" that support a claim for negligent

---

[68] *Id.* at 693.

[69] *Spencer v. Valero Refining Meraux, L.L.C.*, 356 So. 3d 936, 949 (La. 2023).

[70] *Moresi v. Louisiana*, 567 So. 2d 1081, 1096 (La. 1990).

[71] R. Doc. 47-1 at 19.

infliction of emotional distress and that Plaintiffs are likewise unable to make such a showing on summary judgment.

The sixth element exists to guarantee the genuineness of the injury claimed given the speculative nature of claims for negligent infliction of emotional distress without any physical damage and injury.[72] To satisfy the sixth element, a plaintiff must show that the case involves facts from which there is an especial likelihood that genuine and serious mental distress would result.[73] The Court finds there is sufficient evidence in the record to show there are genuine issues of material fact as to whether there was an especial likelihood that a ten-year-old child with disabilities would suffer serious mental distress if, among other things, the child was held in a chokehold, placed in handcuffs, and dragged on the ground.[74] The Court finds a reasonable jury could conclude that J.H.'s emotional distress arose from special circumstances.

Because Plaintiffs have pointed to competent summary judgment evidence to create a genuine dispute of material fact on the one element of the negligent infliction of emotional distress claim that Defendants challenged, the Court must deny Sheriff Lopinto's motion for summary judgment with respect to this claim. The Court makes no determination as to the remaining elements of Plaintiffs' claim for negligent infliction of emotional distress that were not challenged by Sheriff Lopinto.

---

[72] *See Spencer*, 356 So. 3d at 949 ("[R]ecovery for negligent infliction of emotional distress absent physical damage/injury is not precluded; however, given the nature of such claims, a trier of fact must be heedful of the goal of preventing spurious claims, and that not every occasion that causes some harm yields concomitant liability and compensatory damages."); *see also Moresi*, 567 So. 2d at 1096 ("[T]his case does not fall within any category having an especial likelihood of genuine and serious mental distress, and thus lacks any recognized elements guaranteeing the genuineness of the injury claimed.").

[73] *See Spencer*, 356 So. 3d at 947–950.

[74] R. Doc. 71-2 at 16, 41.

13

**E.  Intentional Infliction of Emotional Distress**

Sheriff Lopinto did not move for summary judgment on Plaintiffs' claim for intentional infliction of emotional distress. Lopinto instead asserts Plaintiffs did not make a claim for intentional infliction of emotional distress.[75] But, this is incorrect. Plaintiffs clearly asserted a claim for intentional infliction of emotional distress against all Defendants.[76] The Court therefore notes for clarity that Plaintiffs' claim for intentional infliction of emotional distress remains as a triable issue in this action.

**IV.    CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that Sheriff Lopinto's Motion for Summary Judgment (R. Doc. 47) is **GRANTED IN PART** and **DENIED IN PART**.

The motion for summary judgment is **GRANTED** as to Plaintiffs' claims against Sheriff Lopinto for: (1) disability-based discrimination and failure to accommodate in violation of Title II of the ADA; (2) disability-based discrimination and failure to accommodate in violation of Section 504 of the Rehabilitation Act; and (3) physical condition-based discrimination in violation of Article I, Section 12 of the Louisiana Constitution.

The motion for summary judgment is **DENIED** as to Plaintiffs' claim against Sheriff Lopinto for negligent infliction of emotional distress.

**IT IS THEREFORE FURTHER ORDERED** that Plaintiffs' claims against Sheriff Lopinto for: (1) disability-based discrimination and failure to accommodate in violation of Title II of the ADA; (2) disability-based discrimination and failure to accommodate in violation of Section 504 of the Rehabilitation Act; and (3) physical condition-based discrimination in violation of

---

[75] R. Doc. 47-1 at 17.
[76] R. Doc. 22 at 22 ("Count V: Intentional Infliction of Emotional Distress, Against All Defendants").

14

Article I, Section 12 of the Louisiana Constitution, are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 17th day of June 2026.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**